IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-356-FL

| | |
|---|---|
| DAVID LEE BLOUNT,        ) | |
| )             | |
| Plaintiff,   ) | |
| )             | |
| v.           ) | ORDER |
| )             | |
| AJINOMOTO HEALTH AND ) | |
| NUTRITION,[1]            ) | |
| )             | |
| Defendant.   ) | |

This matter is before the court on defendant's motion to dismiss (DE 11), defendant's motion to enforce settlement agreement (DE 31), and plaintiff's motion to appeal settlement agreement (DE 32). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the court grant's defendant's motion to enforce settlement agreement, denies plaintiff's motion, and denies as moot defendant's motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff initiated this action by filing a petition to proceed in forma pauperis on August 14, 2020. The court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915(e) and found that his hostile work environment claim under Title VII survived frivolity review and could therefore proceed. Defendant filed the instant motion to dismiss plaintiff's complaint on October 8, 2020, on the basis of insufficient process and service, which led the court to stay the parties' scheduling

---

[1] Defendant notes that plaintiff has erroneously named it such and that its correct name is Ajinomoto Health & Nutrition North America, Inc. (Def.'s Mot. (DE 31) at 1).

conference activities pending decision on that motion. Plaintiff responded in opposition to defendant's motion to dismiss and defendant replied.

While that motion was pending, the court received notice, on February 11, 2021, that the case had settled at mediation. Then, on February, 23, 2021, defendant filed the instant motion to enforce settlement agreement, relying upon the report of the mediator, a letter from defendant to plaintiff dated February 8, 2021, a series of email correspondence between plaintiff and defendant, and scanned images that defendant avers prove certain checks were negotiated. That same date, plaintiff filed the instant motion to appeal settlement. Defendant replied to plaintiff's response, on March 1, 2021, and plaintiff filed a document with additional arguments the same day. On March 16, 2021, defendant filed response to plaintiff's motion to appeal the settlement agreement.

### STATEMENT OF FACTS

The undisputed facts pertaining to the settlement agreement, based upon the present record, may be summarized as follows. The parties met via video conference for a mediated settlement conference on February 4, 2021. (Def.'s Mot. (DE 31) at 1; Pl.'s Mot. Appeal (DE 32) at 1; see also Report of Mediator (DE 31-1)). At the mediation, the parties were kept isolated in "separate Zoom rooms," communicating only through the mediator after an initial joint session. (See Def.'s Mot. (DE 31) at 2; Pl.'s Mot. Appeal (DE 32) at 1). The parties eventually came to a settlement agreement, (Report of Mediator (DE 31-1); Pl.'s Mot. Appeal (DE 32) at 1), which would require defendant to pay a certain, confidential amount to plaintiff in exchange for his release of any and all claims against defendant and bound plaintiff to file a notice of stipulation of voluntary dismissal with prejudice within five days of receipt of that payment. (Settlement Agreement (DE 31-2) ¶¶ 2-3). Plaintiff, a representative for defendant, and defendant's counsel all signed the settlement

2

agreement. (Settlement Agreement (DE 31-2) at 7-8; Pl.'s Mot. Appeal (DE 32) at 1 ("It is correct that I signed the agreement at the end of the mediation.")).

On February 8, 2021, defendant sent payment to plaintiff by two mailed checks that were joined by a stipulation of dismissal for plaintiff to complete. (Feb. 8, 2021, Letter (DE 31-3); Pl.'s Mot. Appeal (DE 32) at 2). Plaintiff did not initially send the stipulation of dismissal back to defendant to be sent on for entry because the funds transferred by the checks, while deposited, would not be available for plaintiff's use for up to five or seven days. (Email Correspondence (DE 31-4) at 3; Pl.'s Mot. Appeal (DE 32) at 2). By February 13, 2021, the funds were available for use. (Pl.'s Mot. Appeal (DE 32) at 2; see also id. ("I'm not denying that the funds were drafted when both checks were deposited.")). However, plaintiff changed his mind as to the settlement, which he purported had been made under duress, and informed defendant that he would not sign and submit the stipulation of dismissal, without more. (Pl.'s Mot. Appeal (DE 32) at 2). Plaintiff informed defendant he would only submit the stipulation if an appeal he filed as to the denial of a petition for unemployment benefits was granted and if defendant paid him an additional amount of money. (Email Correspondence (DE 31-4) at 2; Pl.'s Mot. Appeal (DE 32) at 2, 5).

## COURT'S DISCUSSION

"District courts have inherent authority, derived from their equity power, to enforce settlement agreements." Williams v. Pro. Transp., Inc, 388 F.3d 127, 131 (4th Cir. 2004). However, "the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." Hensley v. Alcon Lab'ys, Inc., 277 F.3d 535, 540-41 (4th Cir. 2002) ("Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions."). Yet, a court may "enter judgment

3

Case 5:20-cv-00356-FL    Document 36    Filed 06/09/21    Page 3 of 10

based on that agreement without plenary hearing," Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981), "as long as the excuse for nonperformance is comparatively unsubstantial." See Swift v. Frontier Airlines, Inc., 636 F. App'x 153, 156 (4th Cir. 2016) (per curiam) ("[I]f there is a substantial factual dispute over either the agreement's existence or its terms, then the district court must hold an evidentiary hearing. If, however, a settlement agreement exists and its terms and conditions can be determined, as long as the excuse for nonperformance is comparatively unsubstantial, the court may enforce the agreement summarily.").

Here, the settlement agreement as it appears in undisputed form as an attachment to defendant's motion (DE 31-2), "unambiguously evinces an intent to be bound, and contains sufficiently definite terms." Topiwala v. Wessell, 509 F. App'x 184, 186 (4th Cir. 2013). First, the title of the agreement and its contents would lead a reasonable person to believe that it was "a binding agreement to settle the case along the terms contained therein." Id. See generally Howell v. Smith, 258 N.C. 150, 153 (1962). Plaintiff does not dispute that he signed the agreement. (Pl.'s Mot. Appeal (DE 32) at 1). Second, the document contains all essential terms of the settlement, such as the "sums of money to be transferred, specific dates of transfers, a release[,] . . . and a nondisparagement agreement." Compare Topiwala, 509 F. App'x at 186, with (Settlement Agreement (DE 91-2) ¶¶ 2, 3, 10, 14).

Finding that the parties reached a complete agreement of which the court is able to determine the terms and conditions, the court is able to exercise its inherent authority to enforce that agreement. While normally "dismissal other than on the merits must be supported by a finding of bad faith or other similar abuse," Hensley, 277 F.3d at 543, here, the filing of stipulation of dismissal with prejudice by plaintiff was specifically agreed to in the settlement agreement, (Settlement Agreement (DE 91-2) ¶ 3). Accordingly, the court dismisses plaintiff's claims with

4

prejudice,[2] not as a sanction for bad faith or abuse, but by "specifically enforce[ing] the settlement agreement." Cf. Hensley, 277 F.3d at 543.

Plaintiff argues, however, that the agreement is not enforceable because he agreed to it under duress and because it is unconscionable. The court concludes that the record does not reveal conditions rising to the level of duress and that the agreement is not unconscionable.

"[R]esolution of a motion to enforce a settlement agreement draws on standard contract principles," including defenses to contract. See Hensley, 277 F.3d at 540; see also, e.g., Napier v. Chesapeake & Ohio Ry. Co., 582 F.2d 1344, 1345-46 (4th Cir. 1978) (utilizing mutual mistake of fact principles). One such contract principle is duress, which can serve as a basis for invalidating a contract or a settlement, which is merely a species of contract. Cf. Jurgensen v. Fairfax County, 745 F.2d 868, 890 (4th Cir. 1984) ("It follows that the settlement made by Jurgensen with the Department was not voidable for duress."). "There are three elements to a claim of duress: (1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; and (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1260 (4th Cir. 1991); Link v. Link, 278 N.C. 181, 194 (1971) ("Duress exists where one, by the [u]nlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will.").[3] "Further, to prove duress, [claimant] must establish that a wrongful threat was made

---

[2] The court does so, construing plaintiff's valid contractual assent to dismissal in the settlement agreement as plaintiff's request for dismissal, pursuant to Rule 41(a)(2). Cf. Babcock v. McDaniel, 148 F.3d 797, 799 (7th Cir. 1998) (holding that "district court acted within its discretion in construing the letter as a request for dismissal with prejudice"). In addition, and in the alternative, assuming plaintiff's contractual assent could not be construed as such, the court dismisses plaintiff's claims with prejudice pursuant to Rule 41(b) for failure to prosecute, that is, to file the stipulation of dismissal with prejudice that plaintiff was contractually bound to file. See, e.g., Attkisson v. Holder, 925 F.3d 606, 625 (4th Cir. 2019), as amended (June 10, 2019) ("[T]he propriety of an involuntary dismissal ultimately depends on the facts of each case." (quotation omitted)).

[3] The settlement agreement, which plaintiff seeks to avoid, has a choice of law provision agreeing to governance by North Carolina law. (Settlement Agreement (DE 31-2) ¶ 13). However, the court "need not resolve the choice-of-law question, as it makes no discernible difference to the relevant analysis in the case at bar." World

5

which was of such character as to destroy the free agency of the party to whom the threat was directed." Id. (quotation omitted).

A threat is improper where

(a) what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property, (b) what is threatened is a criminal prosecution, (c) what is threatened is the use of civil process and the threat is made in bad faith, or (d) the threat is a breach of the duty of good faith and fair dealing under a contract with the recipient.

Jurgensen, 745 F.2d at 889-90 (quoting Restatement (Second) of Contracts § 175 (1981)); see also Link, 278 N.C. at 194 ("Ordinarily, it is not wrongful and, therefore, not duress for one to procure a transfer of property by stating in the negotiations therefor that, unless the transfer is made, he intends to institute or press legal proceedings to enforce a right which he believes, in good faith, that he has."). "[A] threat to commence civil process, even if improper, may not amount to duress since defense of the threatened action is often a reasonable alternative." Jurgensen, 745 F.2d at 890.

Here, plaintiff argues that he was under duress when he signed the agreement because defendant, through the mediator, informed him that if he continued the litigation that he would face unwanted challenges, that it knew it would win the case ultimately and before trial, and that it was in his best interest to settle due to money and time, along with other "psychological pressure." (Pl's Mot. Appeal (DE 32) at 1, 3, 4, 5; Pl's Resp. (DE 34) at 1-3). However, plaintiff's asserted fear over what would happen if he did not settle as fueled by defendant's statements on its intentions if he did not settle and its belief as to the result of continued litigation does not

---

Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., 783 F.3d 507, 514 (4th Cir. 2015). Here, under either North Carolina law or even general principles of law, as discussed above, plaintiff has not shown the duress necessary to invalidate the settlement agreement.

constitute duress meriting voiding the settlement agreement, given that there is no indication that plaintiff did not have reasonable alternatives to signing the agreement.

Further, even if the court were to construe defendant's alleged statements as threats, they were not improper in the manner required for a finding of duress. Defendant's attempts to compel plaintiff to settle were not bad faith threats to use civil process; rather, plaintiff had instigated the civil process, and defendant permissibly could argue at negotiation it would contest the merits of plaintiff's claims. Defendant, at worst, engaged in permissible hard bargaining. See, e.g., Chouinard v. Chouinard, 568 F.2d 430, 434 (5th Cir. 1978) ("Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the (party against whom the contract is sought to be voided), will not be deemed duress.").

Plaintiff asserts that defendant "supplied lie after lie" during the mediation, without specifically describing what these lies were; assumedly, the purported lies were defendant's version of the contested facts, the veracity of which as they relate to the merits of plaintiff's Title VII claim is the very heart of the instant litigation. The court cannot, and will not, find duress where a defendant fairly contests its liability and advocates for its perspective of the factual predicate of litigation at mediation. Moreover, that plaintiff undertook mediation with the misapprehension that defendant would "take responsibility for [its] lack of actions while [he] was employed there" does not convert the neutrally supervised mediation into a coercive environment when defendant did not act as plaintiff hoped.

In sum, the record does not reveal any duress that would make the agreement unenforceable.

Plaintiff also argues briefly that the settlement agreement is unconscionable, and therefore unenforceable. (See Pl.'s Mot. Appeal (DE 32) at 3; Pl.'s Resp. (DE 34) at 3). Under North

7

Carolina law and general principles of law, a contract is unenforceable due to unconscionability "only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red Sch. House, Ltd., 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981); accord Riesett v. W.B. Doner & Co., 293 F.3d 164, 172–73 (4th Cir. 2002) ("When the substantive terms of a contract are so one-sided that a court is led to conclude that some defect in bargaining process (such as fraud, duress, or incompetence of a contracting party) led to the formation of the contract, then the unconscionability doctrine may be useful in helping courts ferret out such contracts, whose enforcement would neither promote the autonomy of the contracting parties nor enhance social welfare."). "If the provisions are . . . so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable." Brenner, 302 N.C. at 213.

The court's review of the record, including the settlement agreement and related documents, does not reveal any provisions of the settlement agreement that are "self-evidently oppressive or unconscionable." Korangy v. Comm'r, 893 F.2d 69, 72 (4th Cir. 1990). Plaintiff seems to argue that unconscionability arises from the mere fact that the settlement agreement denied all wrongdoing by defendant pertaining to plaintiff's mental health issues and releases it from liability for that harm. However, "having second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement," Young v. F.D.I.C., 103 F.3d 1180, 1195 (4th Cir. 1997), and this is exactly what plaintiff describes in stating that "[his] decision to <u>change</u> [his] mind is due to being intimidated [and] bullied into signing an agreement that I did not agree with," (Pl.'s Mot. Appeal (DE 32) at 2 (emphasis added)). (See also id. at 4

8

Case 5:20-cv-00356-FL   Document 36   Filed 06/09/21   Page 8 of 10

("I reached out to the defendant in attempts to obtain a more favorable settlement."), 5 ("I simply wanted to improve the settlement already in place.").

Moreover, the fact that the settlement agreement releases defendant from liability for plaintiff's alleged mental harm, rather than shocking the judgment of a person of common sense, seems a reasonably expected result of any settlement agreement, allowing the parties a result they each desire while avoiding litigation costs and reducing uncertainty. Cf. McDermott, Inc. v. AmClyde, 511 U.S. 202, 215 (1994) (The parties' desire to avoid litigation costs[] [and] to reduce uncertainty . . . is sufficient to ensure nontrial dispositions in the vast majority of cases."). See generally Crandell v. United States, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes.").

In sum, having entered into an enforceable, valid settlement agreement and accepted compensation pursuant to such, plaintiff may not now seek a second bite at the proverbial apple to gain further compensation. Cf. Bala v. Com. of Va. Dep't of Conservation & Recreation, 614 F. App'x 636, 637 (4th Cir. 2015) ("Having obtained the benefit of his bargain, Bala cannot now seek a remedy from the courts after knowingly and voluntarily relinquishing the underlying claim."); Orlando Residence, Ltd. v. Nelson, 565 F. App'x 212, 222 (4th Cir. 2014) ("Nelson cannot take advantage of that benefit without also complying with the terms to which he agreed."). Defendant's motion to enforce the settlement agreement, as evidenced in its filing, is granted,[4] meaning that plaintiff's motion to appeal said settlement is denied.

---

[4] Although defendant's motion to enforce the settlement agreement notes that "[d]efendant also seeks its attorney's fees and costs for bringing this motion," (Def.'s Mot. (DE 31) ¶ 11)), defendant does not expand on this argument in its briefing, failing to explain how, in this case, plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or otherwise meriting such fees and costs. Cf. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). Further, the court is mindful that "[t]he Christiansburg standard is applied with particular strictness when the plaintiff is proceeding pro se," Vester v. Murray, No. 88-7564, 1989 WL 68870, at *1 (4th Cir. June 21, 1989) (per curiam), and that "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims," Hughes v. Rowe, 449

9

## CONCLUSION

Based on the foregoing, the court DENIES plaintiff's motion to appeal settlement agreement (DE 32). The court GRANTS defendant's motion to enforce settlement agreement (DE 31). Plaintiff's claims are DISMISSED WITH PREJUDICE. Also for reasons given, defendant's motion for attorney's fees and costs is DENIED. Defendant's motion to dismiss for lack of jurisdiction (DE 11) is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 9th day of June, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

---

U.S. 5, 15 (1980). Accordingly, insofar as defendant's motion for fees and costs is not abandoned, the court denies the motion.